UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. _____ CV _____

Zyra Cayanga,

      Plaintiff,

vs.

CELEBRITY CRUISE LINES,
LTD. a foreign corporation,

      Defendant.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff ZYRA CAYANGA sues Defendant CELEBRITY CRUISE LINES, a foreign corporation, and alleges:

### Nature Of The Action

1. Plaintiff was raped in her cabin while employed as a crewmember aboard one of Defendant's cruise ships. The perpetrator worked for Defendant as a security guard on the same vessel. Plaintiff brings this maritime lawsuit against Defendant to recover damages resulting from the rape and Defendant's independent wrongdoing before and after the sexual assault took place.

### The Parties, Jurisdiction, And Venue

2. Plaintiff is a citizen and resident of the Philippines and over the age of 21.

3. Defendant is a for-profit corporation headquartered in Miami-Dade County, Florida. Defendant's vessel, the *Celebrity Apex* ("*Apex*"), uses Port Everglades and Port of Miami as home ports and operates seven-day voyage itineraries from these ports.

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

1331 and 1333 because Plaintiff's claims against Defendant arise under U.S. General Maritime Law and the Jones Act, 46 U.S.C. § 30104.

5.      The Court has personal jurisdiction over Defendant because Defendant maintains a substantial base of operations in Florida; is authorized to do business in Florida and conducts substantial business in Florida; and has engaged in substantial and not isolated activity within Florida. Defendant also has sufficient minimum contacts with Florida, or has otherwise intentionally availed itself of the Florida market, to render the exercise of jurisdiction by this Court over Defendant permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in the Southern District of Florida because Defendant does business in this District and this District has personal jurisdiction over it.

## Facts Regarding The Rape

7.      Plaintiff was employed by Defendant as a security guard aboard Defendant's vessel, the *Apex*. The rape giving rise to this action occurred on August 7, 2020, while Plaintiff was off duty and asleep in her cabin. The perpetrator, who also worked for Defendant as a ship's security guard, broke into Plaintiff's cabin using a magnetic passkey and then sexually penetrated her without her consent.

8.      The following morning, Plaintiff immediately reported the incident to her supervisor and the shipboard human resources manager. The ship's chief security officer confirmed that a security guard named "Dennis Alisla" ("Dennis") used his master key to break into Plaintiff's cabin the night before.

9.      After reporting the rape, Plaintiff was referred to the ship's medical facility to undergo a sexual assault examination and have photographs taken of her body, genitalia, and the clothing she was wearing at the time of the assault.

10.     The *Apex* was in a shipyard in Saint Nazaire, France when the rape occurred. On Monday, August 10, 2020, Plaintiff filed a police incident report with the local French authorities who collected evidence from her cabin and had her undergo another sexual assault examination.

11.     On August 11, 2020, perpetrator Dennis was taken into custody by the local French authorities and released twenty-four hours later after questioning.

12.     Upon information and belief, Defendant placed perpetrator Dennis on administrative leave from employment and repatriated him to the Philippines.

13.     On August 12, 2020, Plaintiff was summoned by the local French authorities and advised that no further action would be taken on her case because it was based on a "he said, she said in a foreign language," and Malta, the *Apex'* flag country, was not willing to assume responsibility over the investigation and/or prosecution of the reported sexual assault. When at the police station, Plaintiff saw perpetrator Dennis smiling.

14.     In the ensuing days, Plaintiff sought assistance from Defendant to have perpetrator Dennis prosecuted in the Philippines but was told "to get over it, to forget about it, that it's in the past," and to "move on as she was only making herself crazy thinking about the assault."

15.     On August 12, 2020, Defendant arranged a telemedicine consult with a trauma counselor from Miami. The counselor noted that Plaintiff was "struggling with acute stress-related impacts, vivid crying spells, loss of appetite and motivation, restlessness, racing thoughts and difficulties with sleep." The counselor recommended that Plaintiff continue with therapy for the trauma she experienced.

16.     The following week, Plaintiff remained locked in her cabin crying unconsolably, depressed, and ashamed over what she had experienced. Plaintiff also was unable to sleep, worrying about how she would be received by her young son who she left in her mother's care

while she set out to work in order provide for them.

17.     Once in the Philippines, Defendant referred Plaintiff to a gynecologist and a psychiatrist through Shiphealth Inc., a facility located in Manila, Philippines that works closely with Defendant and the Philippine attorneys who represent Defendant.

18.     At all times material, all medical and psychological counseling that Plaintiff received was from physicians selected and approved by Defendant and Shiphealth.

19.     On March 31, 2021, after approximately seven telemedicine consults, Shiphealth declared that Plaintiff was at Maximum Medical Improvement ("MMI") from Post-Traumatic Stress Disorder. Defendant terminated all medical and counseling treatment based on this MMI declaration.

20.     Plaintiff pleaded with Defendant for continued medical and counseling treatment; Defendant, however, willfully, arbitrarily, and capriciously refused to provide her with any further maintenance and cure as required under General Maritime Law.

21.     Plaintiff sought to have perpetrator Dennis prosecuted by Philippine authorities. The authorities denied Plaintiff's prosecution request on the ground they did not have jurisdiction over a crime committed overseas.

### The Employment Contract And Arbitration Provision

22.     Plaintiff was hired by Defendant to work as a security guard aboard the *Apex*[1]. (Exhibit 1).

23.     As a Filipina seafarer, Plaintiff is subject to the Philippine Overseas Employment Agency ("POEA") employment contract and corresponding "Standard Terms and Conditions

---

[1] Plaintiff completed three prior contracts with Defendant before the August 7, 2020 rape.

Governing the Overseas Employment of Filipino Seafarers on Board Ocean-Going Ships" ("Standard Terms and Conditions"). (Exhibit 2).

24.     Section 29 of the Standard Terms and Conditions provides:

DISPUTE SETTLEMENT PROCEDURES  *In cases of claims and disputes arising from this employment,* the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators. If the parties are not covered by a collective bargaining agreement, *the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC)*, pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995, as amended, *or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators.* If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment. The Philippine Overseas Employment Administration (POEA) shall exercise original and exclusive jurisdiction to hear and decide disciplinary action on cases, which are administrative in character, involving or arising out of violations of recruitment laws, rules and regulations involving employers, principals, contracting partners and Filipino seafarers. (Ex. 2, § 29; emphasis added).

25.     The Standard Terms and Conditions defines a work-related injury as an "injury arising out of and in the course of employment." (Exhibit 2, "Definition of Terms" ¶17).

26.     The plain language of the Dispute Settlement Procedures in Section 29 requires arbitration only if the claim is related to and arises out of and in the course of the crewmember's employment.

27.     Section 31 of the Standard Terms and Conditions, the choice of law clause, confirms that the arbitration provision in Section 29 applies only where the crewmember's "claim … aris[es] out of or in connection with this contract …" (Exhibit 2, § 31).

28.     In other words, a crewmember's claim against Defendant is subject to arbitration only where the claim arises out of and in the course of the crewmember's employment and bears a relationship to the crewmember's contractual duties.

29.     All of Plaintiff's claims are based on the rape that occurred in her cabin while she was off duty and asleep. Plaintiff's claims fall outside the scope of the arbitration provision since the sexual assault did not arise out of and in the course of her employment and bears no relationship to performance of her contractual duties as a security guard.

30.     Pursuant to the Standard Terms and Conditions, Plaintiff sought the recommended psychological treatment following the rape. As noted previously in this Complaint, Defendant selected Shiphealth in Manila to provide such treatment.

31.     On March 31, 2021, Shiphealth medical providers declared Plaintiff to be at MMI and issued a "Certificate of Work Relation." This Certificate states: "Based on the medical information presented and the patient's clinical manifestation as well as the known causes of the patient's medical condition, … there is no evidence of the patient's condition's relation to work, and it is considered NOT WORK-RELATED. It is also NOT INCLUDED in the POEA list of occupational diseases." (Exhibit 3).

32.     Along these same lines, on April 26, 2021, Defendant's counsel in Manila advised the undersigned that "… the alleged incident was outside of working hours and not related to any work activity or incident thereto on board the ship… As Ms. Cayanga's condition is not work related, she is not entitled to any disability compensation." (Exhibit 4). Defendant accordingly refused to pay Plaintiff any disability compensation for injuries/medical conditions arising from the rape.

## PLAINTIFF'S DISABILITY CLAIM BEFORE THE NLRC

33.     After Defendant denied Plaintiff any disability compensation, Plaintiff filed a claim with the Philippines National Labor Relations Commission ("NLRC"), pursuant to Section 29 of the Standard Terms and Conditions.

34.     On April 22, 2022, the NLRC Arbiter issued its Decision, which tracked the findings of Defendant's designated physicians at Shiphealth: he ruled that (i) Plaintiff's "mental disorder disturbance" from the rape was not work-related and not aggravated by work conditions; and (ii) in any event, the "final disability grading that closely corresponds to [Plaintiff's] functional capacity is Grade 10-slight mental disorder disturbance." (Exhibit 5). The NLRC Arbiter awarded Plaintiff US $10,075.00 in disability benefits and US $1,075.00 in attorney's fees but denied moral damages or exemplary damages because Plaintiff supposedly failed to prove bad faith or malice on Defendant's part in denying her work-related disability claims. (Exhibit 5).

35.     Given Defendant's stated position that the rape was not related to Plaintiff's work -- and the NLRC Arbiter's ruling which adopted that position -- Plaintiff's claims based on the rape are deemed unrelated to and not in any way connected to her employment or her job duties as a shipboard security guard.

36.     Given Defendant's stated position that the rape was not related to Plaintiff's work -- and the NLRC Arbiter's ruling which adopted that position – Plaintiff's claims based on the rape are not subject to the Dispute Settlement Procedures contained in Section 29 of the Standard Terms and Conditions incorporated into her employment contract with Defendant.

37.     Arbitration is a matter of consent, not coercion. A basic tenet of arbitration law is that a party is not required to arbitrate a claim unless he or she has agreed to submit the claim to arbitration.

38.     Because Plaintiff and Defendant agreed to arbitrate only work-related disability claims arising from Plaintiff's employment as an *Apex* security guard, Plaintiff's claims in this lawsuit for damages resulting from the rape are not subject to the Dispute Settlement Procedures contained in Standard Terms and Conditions Section 29.

**Defendant's Legal Duties Owed To Plaintiff**

39.     Defendant employed and controlled the crewmembers of the *Apex*.

40.     Defendant employed Plaintiff to serve as a seaman,  as  defined  by  the Jones Act, 46  U.S.C. 30104, and General  Maritime  Law, aboard the *Apex*.

41.     Pursuant to the  Jones  Act,  Defendant  owed  Plaintiff  the  duty  to  provide  a reasonably safe place to work and live aboard the *Apex*.

42.     Pursuant to General Maritime Law, Defendant  owed  Plaintiff  the  absolute  and nondelegable duty to provide a seaworthy vessel.

43.     Pursuant to the Jones Act and General Maritime Law,  Defendant owed Plaintiff the nondelegable duty to arrange, provide, and pay for prompt, adequate, and complete medical care and treatment for illnesses and/or injuries sustained while in the service of the *Apex*.

44.     Pursuant to the Jones Act and General Maritime Law,  Defendant owed Plaintiff the nondelegable  duty  to  provide  timely  and  complete maintenance  and  cure  for  illnesses  or injuries sustained while in the service of the *Apex*.

45.     Defendant's duty to provide shipboard medical treatment and timely and complete maintenance and cure exists on a no-fault basis since Plaintiff's injuries and illness arose while in the service of the *Apex* under federal maritime law.

**Defendant's Knowledge Regarding The Prevalence Of Sexual Assaults And Its Failure To Provide A Reasonably Safe Environment For Crewmembers On Its Cruise Ships**

46.     In the years preceding Plaintiff's rape on the *Apex*, there have been many incidents of sexual harassment, sexual assaults (rape), and other sex crimes, committed against both female and male crew members as well as passengers aboard Defendant's vessels.[2]

---

[2]  The prevalence of sex crimes committed aboard cruise ships led to passage of the Cruise Vessel

47.     In fact, while serving as a security officer on Defendant' cruise ship *Equinox* in 2019, Plaintiff was the first responder to the rape of a female crewmember by another crewmember. The perpetrator of that sexual assault is in federal custody and awaiting trial in St. Thomas, U.S. Virgin Islands. Plaintiff has been called to testify in federal court on behalf of the U.S. government in that criminal case.

48.     Given the highly sensitive nature of sex crimes, and the negative publicity sex crimes attract, the cruise lines, including Defendant, have sought to keep these events from public view by entering into confidential settlements and inserting provisions in crewmember employment contracts which call for arbitration of claims and disputes in foreign forums under foreign law. Nevertheless, publicized reports of sexual assaults committed by crewmembers against other crewmembers, crewmembers against passengers, and even passengers against crewmembers, confirm that such assaults frequently occur.

49.     The frequent sexual crimes and incidents of violence against women on Defendant's cruise ships are due to an inadequate number of experienced and properly trained security guards; a shipboard culture where subordinate female crewmember promotions are determined based on whether they give in to the sexual advances of their superiors; the lack of adequately positioned and monitored closed circuit television cameras ("CCTV") in and around crewmember quarters; and poor training, instruction, and supervision of crewmembers.

50.     Female crewmembers often are afraid to report abusive sexual behavior because they are ignored, demoted, or terminated from employment, or the employment of both the victim and the assailant is terminated.

---

Security and Safety Act of 2010. 46 U.S.C. § 3507; Pub. L. No. 111-207, 124 Stat. 2243.

51.     Defendant was on actual notice of the problem with female crewmembers being sexually harassed and sexually assaulted on its cruise ships but has refused to take reasonable steps to protect its female crewmembers and/or prosecute the perpetrators. As a result of Defendant's negligence and/or intentional decision not to implement changes in its training and security protocols, Defendant's cruise ships, including the *Apex*, present an unreasonable danger to unsuspecting women crewmembers like Plaintiff.

52.     Defendant also has attempted to eliminate the rights of its ill or injured crewmembers, including rape victims like Plaintiff, to timely and appropriate medical care by contracting with medical provider facilities like Shiphealth, which serve to protect the interests of the cruise lines and the protection and indemnity clubs insuring their vessels.

53.     Instead of meeting its nondelegable duty to provide its ill or injured crewmembers with maintenance and cure, Defendant routinely seeks to circumvent its maritime obligations via hiring agents in foreign countries. These hiring agents enjoy a lucrative business relationship with Defendant and make substantial monies by providing Defendant with thousands of employees to work on the cruise ships. The hiring agent's loyalty is to Defendant, not to the injured or ill crewmember.

54.     Defendant administers the budgeting of the maintenance and cure owed to its crewmembers by hiring claims personnel trained to limit the medical expenses spent per cruise ship. These employees are trained to deny claims in an HMO-like scheme with the goal of saving money at the expense of crewmembers' health and welfare. These employees defer to in house lawyers who oversee "medical" decisions using non-medical cost-driven criteria.

55.     In furtherance of its improper objectives, Defendant has refused to provide Plaintiff with prompt, adequate, and complete medical care and treatment, medicine, and therapy following

the rape on the *Apex*.

56.     Defendant's failure and refusal to provide Plaintiff with prompt, adequate, and complete medical care and treatment, medicine, and therapy caused and/or contributed to her medical condition, substantially worsened her medical condition, and caused and/or contributed to the deterioration of her emotional and mental wellbeing.

57.     Defendant's conduct is unconscionable: Defendant knows from experience that Plaintiff does not have rights to any medical treatment or disability compensation for a rape/sexual assault aboard Defendant's vessel under the Philippine Overseas Employment Administration ("POEA") laws since such claims are deemed "not work-related."

58.     Defendant has deliberately sought to evade liability for sex crimes perpetrated on its crewmembers by having them enter into employment agreements and/or adhesion contracts which contain forced arbitration clauses and provisions imposing foreign substantive laws and procedures. Defendant's intent in doing so is to deprive crewmembers of their right to bring their claims in a U.S. court (as they have been able to do for decades), and to deprive crewmembers of any meaningful remedies.

59.     These unilateral actions by Defendant are evidence of its willful and arbitrary scheme to deprive ill or injured crewmembers, including rape victims like Plaintiff, of their rights and remedies under U.S. statutory and General Maritime Law.

60.     The highly unfair and involuntary nature of arbitration clauses in the sexual assault context led President Biden to sign into law, on March 3, 2022, federal legislation entitled the "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021," Pub. L. No. 117-90, 136 Stat. 26. The Act, which is codified at 9 U.S.C. §§ 401-402, invalidates any arbitration agreement that requires arbitration of a claim brought under federal law relating to a

"nonconsensual sexual act or sexual contact."[3]

61.     Defendant failed and refused to provide Plaintiff with the maintenance and cure which Defendant was legally obligated to provide under General Maritime Law.

62.     Defendant's failure and refusal to provide prompt, adequate, and complete wages and maintenance and cure was and is intentional, willful, arbitrary, and capricious, without any legal justification whatsoever, and in callous disregard of Plaintiff's rights as a seaman.

63.     Defendant's misconduct substantially delayed Plaintiff's medical care and treatment and compromised her emotional, mental, and physical health and wellbeing.

## COUNT I
## NEGLIGENCE AGAINST DEFENDANT

64**.**     Plaintiff adopts and realleges paragraphs 1 through 63 as if fully set forth herein, and further alleges:

65.     Plaintiff brings this claim against Defendant for its own negligent acts and omissions which allowed perpetrator Dennis to enter Plaintiff's cabin without permission and rape her.

66.     At all times material, Defendant owed Plaintiff the duty to exercise reasonable and ordinary care to keep and maintain the premises where Plaintiff lived and worked (i.e., Defendant's vessel, the *Apex*) in a safe condition.

67.     Defendant breached its duty of reasonable care as follows:

a.     Defendant negligently failed to conduct adequate pre-employment screening of crewmembers in general, and perpetrator Dennis in particular, to determine the crewmembers' psychological and emotional fitness to work for extended periods in a closed environment with little or no recreational down time and away from loved ones;

---

[3] The Act applies to disputes and claims that arise or accrue after the date of enactment. Passage of the act, however, evinces Congress' longstanding public policy of protecting the rights of sex crimes victims.

b.      Defendant negligently entrusted perpetrator Dennis with a master passkey that allowed him to break into Plaintiff's cabin and rape her;

c.      After the female crewmember was raped aboard the *Equinox,* as alleged above in paragraph 47, Defendant negligently failed to implement measures to prevent sexual assaults of other female crewmembers aboard their vessels;

d.      Defendant failed to assist Plaintiff in seeking the prosecution by competent legal authorities of perpetrator Dennis in either the U.S., France, Malta, or the Philippines; Defendant instead left Plaintiff to bring her assailant before legal authorities, causing her aggravation of her mental and psychological health and wellbeing.

e.      Defendant failed to promulgate and/or enforce adequate policies and procedures to prevent (and stop already occurring) sexual assaults and sexual harassment on board its vessels;

f.       Defendant failed to implement adequate security policies and procedures necessary to protect its crewmembers; and

g.      Defendant failed to hire and/or retain and/or train competent protection for crewmembers like Plaintiff.

68.      Defendant knew of the forgoing conditions which caused Plaintiff's harm and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care, should have learned of them and corrected them.

69.      As a direct and proximate result of Defendant's breaches of its duties and negligence, Plaintiff suffered harm, including but not limited to, bodily injury, mental pain and suffering, mental anguish, emotional distress, loss of capacity for the enjoyment of life, physical disability and impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by her disability, aggravation of any previously existing conditions, medical expenses in the care and treatment of her injuries, including psychiatric care and medications, lost wages, income lost in the past, and her working ability and earning capacity has

been impaired. These losses, injuries, and damages are either permanent or continuing in nature, and Plaintiff will suffer these losses, injuries, and damages in the future.

**WHEREFORE**, Plaintiff Zyra Cayanga demands judgment against Defendant Celebrity Cruise Lines, Ltd. for compensatory damages, together with costs, interest, prejudgment interest, and any other relief this Court deems appropriate. Plaintiff demands a jury trial on all issues.

**COUNT II**
**STRICT LIABILITY AGAINST DEFENDANT FOR THE**
**INTENTIONAL ACTS OF ITS EMPLOYEE DENNIS**

70.     Plaintiff adopts and realleges paragraphs 1 through 63 as if fully set forth herein, and further alleges:

71.     Defendant employed perpetrator Dennis as a security guard aboard the *Apex*. As such, Defendant had inherent authority to control perpetrator Dennis' day-to-day job duties and determine whether to renew or terminate his contracts.

72.     Perpetrator Dennis used a master passkey, which Defendant negligently entrusted him with, to access Plaintiff's cabin and rape her.

73.     By virtue of Defendant's principal/agent relationship with perpetrator Dennis, Defendant is strictly liable to Plaintiff for perpetrator Dennis' intentional wrongdoing.

74.     As a direct and proximate result of perpetrator Dennis' sexual assault of Plaintiff, Plaintiff suffered harm, including but not limited to, bodily injury, mental pain and suffering, mental anguish, emotional distress, loss of capacity for the enjoyment of life, physical disability and impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by her disability, aggravation of any previously existing conditions, medical expenses in the care and treatment of her injuries, including psychiatric care and medications, lost wages, income lost in the past, and her working ability and earning capacity has been impaired.

These losses, injuries, and damages are either permanent or continuing in nature, and Plaintiff will suffer these losses, injuries, and damages in the future.

**WHEREFORE**, Plaintiff Zyra Cayanga demands judgment against Defendant Celebrity Cruise Lines, Ltd. for compensatory damages, together with costs, interest, prejudgment interest, and any other relief this Court deems appropriate. Plaintiff demands a jury trial on all issues.

## COUNT III
## <u>SPOLIATION OF EVIDENCE</u>

75.     Plaintiff adopts and realleges paragraphs 1 through 63 as if fully set forth herein, and further alleges:

76.     Defendant's crewmember sexually assaulted fellow crewmember Plaintiff while aboard Defendant's cruise ship, the *Apex.*.

77.     Defendant had a duty to preserve evidence including Plaintiff's blood, urine, and DNA, medical records, laboratory tests results, CCTV tapes, door activity reports, telephone records, and Plaintiff's belongings gathered at the scene of the crime, statements, photographs, and forensic evidence, and to not permit the evidence to be lost, altered, damaged, or destroyed.

78.     Alternatively, Defendant voluntarily undertook and commenced performance of the duty to preserve the evidence and was thereby obligated to act in a careful manner.

78.     Plaintiff had potential causes of action against third parties, including against perpetrator Dennis for raping her. The spoliated evidence was directly relevant to these causes of action. Plaintiff had a right to have this evidence preserved, inspected, and retained by competent and experienced investigators, experts, and forensic scientists.

79.     Defendant negligently and/or intentionally and/or maliciously caused and/or permitted this relevant evidence to be lost, altered, damaged, or destroyed.

80.     Defendant's failure to preserve the evidence has significantly impaired Plaintiff's ability to prove potential causes of action against Defendant and others, including perpetrator Dennis, and has interfered with the efforts of law enforcement authorities to successfully investigate the crime and bring Defendant's crewmember to justice.

81.     As a direct and proximate result of Defendant's breach of the foregoing legal duty to preserve evidence, Plaintiff incurred damages, including the inability to prove a civil case of personal injury and/or a criminal case of sexual assault and battery (rape) against the third party or parties responsible for the crime.

**WHEREFORE**, Plaintiff Zyra Cayanga demands judgment against Defendant Celebrity Cruise Lines, Ltd. for compensatory damages, together with costs, interest, prejudgment interest, and any other relief this Court deems appropriate. Plaintiff demands a jury trial on all issues.

## COUNT IV
## <u>JONES ACT NEGLIGENCE</u>

82.     Plaintiff adopts and realleges paragraphs 1 through 63 as if fully set forth herein, and further alleges:

83.     At all times material, Defendant employed Plaintiff as a seaman, within the definition of the Jones Act, to serve as an *Apex* crewmember while in in navigable waters.

84.     Defendant owed Plaintiff the duty to provide a safe place to work such that Plaintiff could perform her job obligations in a reasonably safe manner and live aboard the vessel free from sexual violence and/or sexual harassment. Defendant breached the foregoing duty by:

a.     Failing to use reasonable care to provide Plaintiff with a safe place to work and live on the cruise ship;

b.     Failing to provide a reasonable number of experienced and trained security officers,

supervisors, and guards on the cruise ship and/or otherwise provide adequate security to its female crewmembers;

      c.      Failing to install monitored security cameras on the cruise ship in the crew area and public areas to serve as a deterrent to incidents of sexual harassment and/or assault and/or or to permit Defendant to timely to respond to such incidents;

      d.      Failing to provide adequate training, instruction,  and supervision of its crewmembers;

      e.      Failing to maintain and enforce reasonable rules and regulations regarding the prevention of sexual harassment and/or sexual assault;

      f.      Refusing to implement the recommendations of security experts;

      g.      Failing to perform adequate background checks and psychological screening of its employees;

      h.      Negligently hiring, selecting, and retaining crewmembers with dangerous propensities;

      i.      Failing to adequately investigate prior incidents and injuries where crewmembers and passengers have been sexually assaulted and/or harassed on the *Apex* and other vessels in Defendant's fleet of cruise ships;

      j.      Ignoring prior complaints of sexual assault and sexual harassment on the *Apex* and other vessels in Defendant's fleet of cruise ships and failing to implement a system for protecting female employees and passengers on the cruise ships;

      k.      Covering up prior incidents of sexual assault and/or sexual harassment aboard its fleet of cruise ships;

      l.      Failing to respond reasonably to incidents of sexual assault and/or sexual

harassment;

    m.    Requiring Plaintiff to work under hostile conditions;

    n.    Failing to warn Plaintiff of the unreasonably dangerous conditions which existed on the *Apex* including rapists on cruise ships;

    o.    Failing to provide prompt, adequate, and complete medical care, which aggravated Plaintiff's injuries and caused her to experience additional pain and suffering and disability.

85.    As a direct and proximate result of Defendant's breaches of its duties and negligence, Plaintiff suffered harm, including but not limited to, bodily injury, mental pain and suffering, mental anguish, emotional distress, loss of capacity for the enjoyment of life, physical disability and impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by her disability, aggravation of any previously existing conditions, medical expenses in the care and treatment of her injuries, including psychiatric care and medications, lost wages, income lost in the past, and her working ability and earning capacity has been impaired. These losses, injuries, and damages are either permanent or continuing in nature, and Plaintiff will suffer these losses, injuries, and damages in the future.

**WHEREFORE**, Plaintiff Zyra Cayanga demands judgment against Defendant Celebrity Cruise Lines, Ltd. for compensatory damages, together with costs, interest, prejudgment interest, and any other relief this Court deems appropriate. Plaintiff demands a jury trial on all issues.

## COUNT V
## UNSEAWORTHINESS

86.    Plaintiff adopts and realleges paragraphs 1 through 63 as if fully set forth herein, and further alleges:

87.    Under General Maritime Law, a shipowner has an absolute and nondelegable duty

to furnish a seaworthy vessel. The shipowner's duty is breached when a temporary or permanent condition of the vessel renders the vessel not reasonably fit for its intended use.

88.     The shipowner's duty to furnish a seaworthy vessel extends to the vessel's crew. The shipowner breaches its duty to provide a seaworthy vessel by manning the vessel with an unfit, incompetent, inadequate, or improperly trained or supervised crew.

89.     Defendant employed and controlled the crew of the *Apex*, and implemented work practices aboard the vessel.

90.     Defendant owed Plaintiff the nondelegable duty to provide her with a seaworthy vessel upon which to work and live free from crewmembers with a disposition to commit sexual assault and/or sexual harassment.

91.     Defendant breached the foregoing duty by failing to provide Plaintiff with a seaworthy vessel on which to work and live. Defendant 's vessel *Apex* was unseaworthy due to :

a.     An inadequate crew -- particularly the security personnel -- which was understaffed and deficient in number and in training;

b.     Having crewmembers with a disposition and proclivity for assaulting people such that the ship becomes a perilous workplace;

c.     The unsafe practice of refusing to permit crewmembers to receive medical treatment in the United States where the crewmembers could receive prompt, adequate, and complete medical treatment;

d.     The unsafe practice of sending seriously ill/injured crewmembers back to their home countries, where they cannot receive necessary medical treatment, to save money; and

e.     The presence of dangerous, violent, and aggressive male crewmembers who are permitted to sexually assault or sexually harass female crewmembers with impunity.

92.     As a direct and proximate result of Defendant's breach of the foregoing legal duties and the unseaworthiness of its vessel, Plaintiff suffered harm, including but not limited to, bodily injury, mental pain and suffering, mental anguish, emotional distress, loss of capacity for the enjoyment of life, physical disability and impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by her disability, aggravation of any previously existing conditions, medical expenses in the care and treatment of her injuries, including psychiatric care and medications, lost wages, income lost in the past, and her working ability and earning capacity has been impaired. These losses, injuries, and damages are either permanent or continuing in nature, and Plaintiff will suffer these losses, injuries, and damages in the future.

**WHEREFORE**, Plaintiff Zyra Cayanga demands judgment against Defendant Celebrity Cruise Lines, Ltd. for compensatory damages, together with costs, interest, prejudgment interest, and any other relief this Court deems appropriate. Plaintiff demands a jury trial on all issues.

### COUNT VI
### FAILURE TO PROVIDE PROMPT, ADEQUATE, AND
### COMPLETE MEDICAL TREATMENT UNDER THE JONES ACT

93.     Plaintiff adopts and realleges paragraphs 1 through 63 as if fully set forth herein, and further alleges:

94.     Defendant had an absolute and nondelegable duty under the Jones Act, 46 U.S.C. 30104, to provide its  crewmembers, including Plaintiff, with prompt, adequate, and complete medical care and treatment for injuries sustained while in the service of the *Apex*.

95.     Plaintiff sustained serious illness/injuries while in the service of the *Apex* .

96.     Defendant failed to provide prompt, adequate, and complete medical care and treatment for Plaintiff's serious illness/injuries by:

a.      Failing to promptly and adequately diagnose Plaintiff's medical condition;

b.      Failing to promptly and adequately treat Plaintiff's injuries;

c.      Failing to prescribe appropriate medications and therapy to Plaintiff;

d.      Failing to schedule Plaintiff with qualified and appropriate medical care and treatment;

e.      Failing to refer Plaintiff ashore promptly for medical evaluation, including appropriate diagnostic tests or procedures;

f.      Failing to provide Plaintiff with prompt, full and complete medical care and treatment;

g.      Failing to promptly arrange and pay for required medical care and treatment when such care and treatment was medically necessary and directly related to the serious illness/injuries Plaintiff sustained while in the service of the *Apex*;

h.      Failing to arrange for appropriate laboratory tests and other diagnostic tests;

i.      Failing to involve appropriate medical experts in Plaintiff's medical care and treatment; and

j.      Failing to involve appropriate rehabilitation experts in  Plaintiff's case to facilitate her recovery.

97.      As a direct and proximate result of Defendant's failure to provide Plaintiff with prompt, adequate, and complete medical care, Plaintiff sustained additional  illness/injuries, prolonged and delayed recovery, additional pain and suffering, mental anguish, depression, disability, lost wages, and loss of earning capability and earning capacity.

**WHEREFORE**, Plaintiff Zyra Cayanga demands judgment against Defendant Celebrity Cruise Lines, Ltd. for compensatory damages, together with costs, interest, prejudgment interest,

and any other relief this Court deems appropriate. Plaintiff demands a jury trial on all issues.

**COUNT VII**
**FAILURE TO TIMELY PROVIDE ENTIRE**
**MAINTENANCE AND CURE UNDER GENERAL MARITIME LAW**

98.     Plaintiff adopts and realleges paragraphs 1 through 63 as if fully set forth herein, and further alleges:

99.     Plaintiff sustained illness/injuries while serving as a member of the crew on the *Apex*.

100.     Pursuant to General Maritime Law, Plaintiff is entitled to receive prompt, adequate, and complete maintenance and cure from Defendant until she reaches MMI for the medical condition in question, as determined by a qualified medical doctor. This maintenance and cure includes, among other things, sick wages, lodging expenses, food, beverages, living expenses, travel to and from healthcare providers, medical care and treatment, therapy, medication, rehabilitation, and other medical services and expenses.

100.     Defendant purposefully refused to arrange and pay for timely, adequate, and complete medical cure despite its knowledge that such cure is legally required and necessary for the support and medical treatment of Plaintiff. Defendant failed to meet its maintenance and cure obligations by:

a.     Referring Plaintiff to medical facilities that serve to protect the financial interests of Defendant, which led to inadequate and incomplete medical treatment;

b.     Failing to pay Plaintiff all her actual daily living expenses and all her medical cure;

c.     Ignoring and/or unreasonably delaying in responding to Plaintiff's attempts to obtain prompt, adequate, and complete maintenance and cure;

d.     Unreasonably delaying payment for Plaintiff's maintenance and sick wages and

paying an amount which was inadequate;

d.      Refusing to reimburse Plaintiff for the medical expenses, medication, travel expenses, lodging, food, beverages, toiletries, and otherliving expenses which Plaintiff incurred;

e.      Failing to authorize rehabilitative therapies to permit Plaintiff to engage in normal life functions;

f.      Hiring incompetent and unqualified doctors who performed negligent medicine;

g.      Failing to involve appropriate rehabilitation experts in P l a i n t i f f ' s case to facilitate her recovery;

h.      Sending Plaintiff back to her home country, when s h e needed extensive professional treatment, and then abandoning her;

i.      Refusing to arrange for the involvement of appropriate experts necessary to treat a rape victim;

j.      Investigating the rape solely to protect Defendant's legal and financial interests rather than focusing on Plaintiff's medical condition; and

k.      Delegating its nondelegable maintenance and cure obligations to a third party that was unable to arrange competent medical care.

101.    Plaintiff was required to retain undersigned counsel to assert her rights and to obtain what Defendant failed and refused to arrange, provide, and pay for to date and in the future.

102     Due to Defendant's foregoing acts and omissions, Plaintiff incurred maintenance and medical expenses and has become obligated to pay the undersigned a reasonable attorney's fee.

103.    Defendant's wrongful failure to provide Plaintiff with the prompt, adequate, and complete maintenance and cure to which she is entitled to was and is willful, arbitrary, capricious

and in total disregard of Plaintiff's rights as a seaman.

104.    As a direct and proximate result of Defendant's failure to provide Plaintiff with prompt, adequate, and complete medical care, Plaintiff sustained additional illness/injuries, prolonged and delayed recovery, additional pain and suffering, mental anguish, depression, disability, lost wages, and loss of earning capability and earning capacity.

**WHEREFORE**, Plaintiff Zyra Cayanga demands judgment against Defendant Celebrity Cruise Lines, Ltd. for compensatory and punitive damages, together with costs, interest, prejudgment interest, and any other relief this Court deems appropriate. Plaintiff demands a jury trial on all issues.

## <u>REQUEST FOR JURY TRIAL</u>

Plaintiff Zyra Cayanga is entitled to and requests trial by jury on all issues and all counts alleged in this Complaint.

Dated:  June 1, 2022

Respectfully submitted,
By: /s/Julio J. Ayala

Julio J. Ayala, Esq
Crewmember & Maritime Advocacy Center
1100 Catalonia Ave.
Coral Gables, Florida 33134
Tel: (305) 374-9099
Fax: (305) 374-5099
Florida Bar No. 0977070
crewesq@crewadvocacy.com